UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JENNIFER JENKINS

        Plaintiff,

vs.                                  Case No.

S. DAVID ANTON, P.A. d/b/a
Anton Legal Group, and
S. DAVID ANTON, Individually

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff JENNIFER JENKINS ("Jenkins"), by and through her undersigned counsel, hereby sues Defendant S. DAVID ANTON, P.A., a Florida professional association, d/b/a Anton Legal Group ("Anton Legal Group"), and S. DAVID ANTON, individually ("Anton"), and states as follows:

### Nature of the Action

1. This is an action for damages, including unpaid overtime, liquidated damages, and attorney's fees, arising under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("the FLSA").

### Jurisdiction and Venue

2. Jurisdiction in this Court for the FLSA claim is proper under 28 U.S.C. §1331, as Plaintiff's claims arise under 29 U.S.C. §216(b).

3. Venue is proper in the Middle District because Plaintiff resides in this District (in St. Petersburg), Defendants do business in the District (with their principal office

in Tampa), and Plaintiff's employment for Defendants was based in Hillsborough County, FL (Tampa).

## Parties

4. Jenkins is an individual residing the State of Florida, specifically in St. Petersburg, Florida, and at all times relevant hereto was an employee of Anton Legal Group, as defined by the FLSA.

5. Jenkins routinely engaged in interstate commerce as a paralegal employed by Anton Legal Group, including but not limited to:

    a. Making and receiving long-distance phone calls from out-of-state;

    b. Scheduling and participating in conference calls involving out-of-state participants;

    c. Arranging telephone hearings involving out-of-state participants, arranging for out-of-state process servers to serve subpoenas on out-of-state witnesses, and arranging for out-of-state witnesses to testify telephonically at trial;

    d. Preparing, sending and receiving legal documents and discovery materials by fax, Federal Express, email, and regular U.S. mail to and from clients, opposing attorneys, entities and agencies in other states;

    e. Preparing, sending, and receiving filing documents for FINRA arbitrations and SEC proceedings, and working with the database maintained by FINRA/SEC.

    f. Using the Internet to conduct legal research and other research using national data bases, including but not limited to the following:

- Google search engine/Internet Explorer web browser
- Westlaw (Thompson Reuters – headquarters, New York)
- FINRA (Financial Industry Regulatory Authority – Washington, D.C.)
- PACER (maintained by the Administrative Office of the U.S. Courts – Washington, D.C.)
- SEC (U.S. Securities and Exchange Commission – headquarters, Washington, D.C)
- EDGAR (maintained by the SEC)
- FBI (Record/Information Dissemination Section – Winchester, VA)
- SIPC (Securities Investor Protection Corporation – Washington, D.C.)
- Public Records and Property Appraisers (multiple states)
- Business entities/filings (multiple states)
- PIABA (Public Investors Arbitration Bar Association) – home office, OK; interactive forum contributions, multiple states)

g. Using the Internet to receive and send emails across state lines;

h. Using an Anton Legal Group credit card to make purchases on behalf of her employer across state lines; and

i. Accepting and processing client credit card payments from out of state.

6. Based upon the foregoing activities, Jenkins' employment was subject to individual coverage under the FLSA.

7. Anton Legal Group is a Florida corporation, doing business in Hillsborough County, Florida, and is an "employer" as defined by the FLSA.

8. Anton Legal Group, at all times material hereto, had two (2) or more employees (including Jenkins) engaged in work involving interstate commerce.

9. In addition to performing work directly for Anton Legal Group, Jenkins also, as part of her employment, performed work for additional related entities that did business out of the same office location as Anton Legal Group, namely: Cigar City, Uptown Realty, and Channelside Investment Co. ("the Real Estate Businesses").

10. Work performed by Jenkins for the Real Estate Businesses included:

    a. Collecting rent checks from tenants who stopped by the office;

    b. Recording the rent in notebooks and in QuickBooks and other online accounting software for the Real Estate Businesses;

    c. Generating checks for real estate related expenses;

    d. Assisting the Real Estate Businesses with documentation for evictions of defaulting tenants;

    e. Handling phone calls from tenants and other parties on behalf of the Real Estate Businesses; and

    f. Participating in email communications with one of the partners in the Real Estate Businesses on a regular basis regarding various matters concerning the Real Estate Businesses.

11. Jenkins did not receive any additional consideration or wages for the work she performed for the Real Estate Businesses, and understood that her compensation from Anton Legal Group was intended to compensate her for performing work for the additional entities.

12. Based upon the foregoing, the Real Estate Businesses and Anton Legal Group were joint employers of Jenkins under the FLSA.

13. Anton Legal Group is subject to enterprise coverage under the FLSA because, based upon information and belief, the combined annual gross sales revenues of Anton Legal Group and the Real Estate Business were not less than Five Hundred Thousand Dollars ($500,000.00) at all times material hereto.

14. Anton is the owner of Anton Legal Group, and is an employer as defined by the

4

FLSA, based upon the following:

 a. Anton was involved in the day-to-day operations of Anton Legal Group;

 b. Anton hired and fired employees of Anton Legal Group (including Jenkins);

 c. Anton supervised the work of Anton Legal Group employees (including Jenkins);

 d. Anton determined the manner in which employees (including Jenkins) would be paid; and

 e. Anton acted in the direct interest of Anton Legal Group with respect to Jenkins and other Anton Legal Group employees.

## General Allegations

15. Jenkins was employed as a paralegal by Defendants from February 11, 2013 through November 4, 2013.

16. Jenkins' position as paralegal is clearly nonexempt under the FLSA.

17. When Jenkins applied for the position of paralegal, she specifically advised Defendants that she was attending evening classes at University of South Florida and had already registered for graduation from USF in preparation for applying to Stetson Law School for the next Fall term, and therefore was seeking a paralegal position where she would only be required to work during regular business hours, since she was enrolled in several evening classes that started at 6:00 p.m. on USF's St. Petersburg, Tampa, and Sarasota campuses.

18. Anton advised Jenkins that her work schedule would be "full-time," which he defined as forty (40) hours per week, from 8:30 a.m. to 5:15 p.m., with a forty-five

5

(45) minute lunch break (unpaid), and provided a written job description, a copy of this is attached hereto as Exhibit "A."

19. As set forth on Exhibit "A" Jenkins expected that occasionally due to client demands she might have to "substitute time" or "infrequently" work in excess of the stated hours.

20. Anton offered Jenkins an annual salary of Fifty-Six Thousand Dollars ($56,000), which was comparable to the last position she had held as a paralegal at another law firm, where she worked 37.5 to 40 hours per week (until that office closed when the attorney she worked for retired).

21. Jenkins accepted the position with the understanding that she would be working approximately forty (40) hours per week for an annual salary of Fifty-Six Thousand Dollars ($56,000), which equated to an hourly rate of Twenty-Nine Dollars ($29.00) per hour, and that if she needed to work extra time on a particular day (such as working through lunch) she would be given time off another day in the same week as "time substitution" to keep her hours at forty (40).

22. Despite Anton's representations regarding the hours Jenkins would be working, throughout her employment she was required to work an average of seventy (70) hours per week.

23. Jenkins would never have accepted the position if she had known she would be required to work a significant amount of overtime, due to her evening class schedule at USF and her responsibilities as a single mother.

24. Jenkins made repeated objections to being required to stay late, miss classes at USF, miss important family activities, and remain in what she considered an unsafe

6

work environment in the evenings due to the office's location in Ybor City.

25. Jenkins made repeated objections to the fact that she was being required to work substantial additional hours, and was given neither corresponding time off in the same work week nor overtime pay.

26. Jenkins specifically told Anton that she thought it was unfair for her to work substantial additional hours that were billed to the law firm's clients at $150 per hour, while she received no compensation at all for her overtime.

27. Specifically, Jenkins told Anton: "The firm is being compensated for my overtime, but I am not."

28. Jenkins also repeatedly objected to being required, in addition to her paralegal duties, to take on front desk responsibilities when another employee was terminated shortly after she was hired, as performing those additional duties meant her regular workload as a paralegal could not be completed in a forty (40) hour week, causing her to work in the office late in the evenings and also perform work from her home, including drafting and reviewing discovery and other documents, and exchanging emails with clients regarding work matters.

29. As a result of the significant amount of hours Jenkins was required to work, she was forced to seek an incomplete on her college classes, was unable to graduate as scheduled that semester, and had to defer her application to Stetson Law School.

30. Through calendars, phone records, and email records Jenkins has been able to calculate the total number of overtime hours for which she was unpaid as follows: 774.88 hours of overtime in the office, and an additional 304 hours of overtime at home, for a total of 1,078.88 hours of unpaid overtime.

31. Based upon her regular hourly rate of $29, Jenkins' should have been paid an overtime rate of $43.50 for all hours over forty (40) worked per week.

32. On November 18, 2013, Anton Legal Group (through Anton) terminated Jenkin's employment *retroactive* to November 4, 2013, when she was forced to miss work due to a catastrophic motorcycle injury that left her son with a traumatic brain injury and significant physical impairments.

33. Despite demand, Defendants have failed and refused to pay Jenkins the overtime that is due and owing.

34. As a law firm and as an attorney, Anton Legal Group and Anton either knew their conduct violated the FLSA or acted in reckless disregard for its provisions, and, in fact, had paid overtime to previous employees working as paralegals, just like Jenkins.

35. Jenkins has engaged the undersigned attorney to represent her, and is obligated to pay a reasonable attorney's fee.

## Count I

## Unpaid Overtime

36. Plaintiff reincorporates by reference the allegations set forth in paragraphs 1 through 35 as though fully stated herein.

37. This is an action for damages for unpaid overtime under the FLSA.

38. Jenkins was an employee of Defendants.

39. Anton Law Group was Jenkins' employer as defined by the FLSA.

40. Anton was Jenkins' employer as defined by the FLSA, and is personally liable for any unpaid overtime owed to Jenkins.

41. Anton Law Group is a covered enterprise as defined by the FLSA.

42. Jenkins has individual coverage under the FLSA

43. Defendants had a duty under the FLSA to maintain proper time records, and failed to do so.

44. Jenkins was entitled under the FLSA to be paid at the statutory rate of one-and-one- half times her regular hourly rate for all hours worked over 40 per week.

45. Defendants had a duty under the FLSA to apprise Plaintiff of her rights under the FLSA, and failed to do so.

46. Defendants failed to pay any overtime compensation to Plaintiff during her employment.

47. Defendants' failure to pay overtime was intentional and willful.

48. As a result of Defendants' failure to pay overtime, Jenkins has suffered damages in the approximate amount of $46,931.28 in unpaid overtime and $46,931.28 in liquidated damages, for a total of $93,862.56.

49. In addition, Jenkins has incurred attorney's fees and costs, which are recoverable under the FLSA, specifically 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff requests this Court award damages in the amount of $93,862.56 in unpaid overtime and liquidated damages, prejudgment interest, a reasonable attorney's fee, the costs of this action, and all other proper relief.

## DEMAND FOR JURY TRIAL

A jury trial is hereby demanded on all counts so triable.

Respectfully Submitted,

/s Phyllis J. Towzey
_____
PHYLLIS J. TOWZEY, ESQUIRE
Florida Bar No. 724970
Phyllis J. Towzey, P.A.
The Kress Building
475 Central Avenue, Suite 401
St. Petersburg, FL  33701
(727) 895-1200
(727) 892-9925 (fax)
phyllis@towzey.com
Attorneys for the Plaintiff