**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JENNIFER JENKINS,
Plaintiff,

Case No.: 8:15-cv-00283-JSM-AEP

v.

S. DAVID ANTON, P.A., d/b/a
Anton Legal Group, a Florida
Profit corporation; and
S. DAVID ANTON, individually,
Defendants.
_______________________________/

# DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants hereby move this Court for Summary Judgment on all issues pursuant to Rule 1.510 as there are no material disputed issues of fact related to liability or damages and, in support, states as follows:

## Case Summary

Plaintiff, Jennifer Jenkins, sues Defendants David Anton and Anton Legal Group for alleged overtime non-payment. While Defendants contend Plaintiff never worked overtime, for the purposes of this motion, it will be assumed that she did. Defendants are entitled to summary judgment in this matter on the grounds that Plaintiff cannot show that FLSA coverage exists under either an enterprise coverage test or an individual coverage test. Absent coverage, Plaintiff's claims should be dismissed.

## Summary of Legal Facts

Anton Legal Group is a small Tampa, Florida, law firm located in Ybor City. The firm essentially has three types of clientele: family law clients, securities arbitration clients and real estate business clients. Anton Affid. ¶2.

Anton Legal Group operates 100% within the state of Florida with the vast majority of its cases being filed in Hillsborough County and Pinellas County, Florida. During 2013, 100% of Anton Legal Group's clients were Florida residents or solely Florida businesses. *Id.* ¶3, Hayes Affid. ¶4.

All of Anton Legal Group's court cases are litigated in Florida state court and all of Anton Legal Group's arbitration cases are filed in and are conducted in the state of Florida. No aspect of Anton Legal Group's practice occurs outside the state of Florida. Anton Affid ¶4, Hayes Affid. ¶4.

While one arbitration case from 2013 had out-of-state attorneys representing the side opposed to Anton Legal Group's clients, and while one witness lived outside the state of Florida, even this case was filed, arbitrated and heard in the state of Florida. All other cases involved Florida counsel. Anton Affid. ¶5, Jenkins Depo pp. 46, 52, 56, 58, 62, 63.

Anton Legal Group's real estate company clients are all Florida entities and all own exclusively Florida real estate property. Anton Affid. ¶6.

Anton Legal Group does not solicit business outside of the state of Florida. *Id.* ¶7.

Anton Legal Group's gross receipts for 2012, 2013, and 2014 were all under $500,000. At no time relevant did the firm come close to $500,000 in revenue in any year at issue. *Id.* ¶7.

Plaintiff Jennifer Jenkins (hereinafter "Plaintiff" or "Jenkins") was hired as a paralegal starting on or around February 11, 2013. Plaintiff continued in this role until November of 2013. *Id.* ¶8, Jenkins Depo pp. 5-6.

While Plaintiff used the firm's phones, almost none of such use involved out of state calls as Anton Legal Group's practice consisted and still consists entirely of in-state litigation and business. There would be a rare out of state call to an out of state law firm in a single arbitration

case in May 2013 and an occasional call to a client on vacation or otherwise temporarily out of state. Anton Affid. ¶9, Jenkins Depo p. 117.

Similarly, while Plaintiff used the firm's computer for e-mails, almost none of such emails involved out of state e-mails. The rare out of state e-mail involved a handful of e-mails to an out of state law firm and to an out of state witness in a single arbitration case in or around May 2013 and an occasional e-mail to a client who, although all Florida residents, may have been temporarily out of state on vacation or for other reasons. Anton Affid. ¶9, Jenkins Depo pp. 117, 63-65.

Plaintiff did not send out of state faxes. While Plaintiff's job duties involved internet research and other related internet use, all research was done as the end user and all was for use in Florida litigation and Florida arbitration.[1] Anton Affid. ¶12.

Throughout her time at Anton Legal Group, Plaintiff never shipped goods either interstate or otherwise. Anton Affid. ¶13.

The vast majority of Plaintiff's work as a paralegal involved preparation of discovery and pleadings. Plaintiff also answered the phone when needed, communicated with clients, researched case-related issues and, for about thirty (30) minutes or less per week, took calls or received payments from tenants for the firm's real estate clients. Anton Affid. ¶14.

Defendant David Anton is the sole owner of Defendant Anton Legal Group. David Anton is part owner of several real estate companies, each of which is a client of Anton Legal Group and each of which are managed by one of the other owners of the real estate companies, Richard Chad. Richard Chad exercised no control over Plaintiff or any of the real estate companies that are clients of Anton Legal Group. Anton Affid. ¶15, Chad Affid. ¶¶1-11.

---

[1] Plaintiff kept timeslips records showing her time on these matters. Those records are attached to Anton Affid. as Ex. B.

At no time prior to the decision to discharge Plaintiff did Plaintiff ever submit to David Anton any claimed hours worked over 40 in any given work week nor did Plaintiff ever claim she had worked any overtime hours. The first time Plaintiff claimed she worked overtime was when she e-mailed Mr. Anton to complain that she did not believe his letter of recommendation he prepared for her had praised her adequately. Even then, Plaintiff did not state what hours she believed she worked overtime. Anton Affid. ¶16, Hayes Affid. ¶7.

Prior to the filing of the instant matter, counsel for Defendants informed Plaintiff's attorney on numerous occasions that during Plaintiff's time at Anton Legal Group, the firm's gross revenues were below the statutory minimum of $500,000 for establishing enterprise coverage. Instead of dismissing the action, Plaintiff's counsel tried to claim that income of some of Defendants' clients should be included in the firm's revenues. Despite this far-fetched claim, Plaintiff did nothing to amend the pleadings to include said clients as third party defendants. Anton Affid. ¶17.

## SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v Catrett*, 477 U.S. 317, 322 (1986). Summary judgment for defendants is appropriate in employment cases. The purpose of Rule 56 is to eliminate the needless delay and expense to the court and the Parties occasioned by an unnecessary trial. *Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1348 (S.D. Fla. 2001) citing *Celotex Corp.*, 477 U.S. at 322-323.

Rule 56(c) "mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and

on which the party will bear the burden of proof at trial." *Id.* at 1349. Further, although the court must consider the evidence in the light most favorable to the non-moving party, the non-moving party cannot rest upon bare assertions, conclusory allegations, surmise, or conjecture, but instead, must produce concrete evidence in the form of specific facts on which the jury could reasonably find for the non-movant. *Johnston*, 144 F. Supp. 2d at 1349 citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986). The existence of a mere scintilla of evidence is insufficient. *Johnston*, 144 F. Supp. 2d at 1349.

Consideration of a summary judgment motion does not lessen the burdens on the non-moving party because the non-moving party bears the burden of coming forward with sufficient evidence on each element that must be proven. *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990) (citations omitted). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* Thus, the moving party is entitled to judgment as a matter of law if the non-moving party has failed to make a sufficient showing on an essential element as to which he/she has the burden of proof. *Id.* citing *Celotex*, 477 U.S. at 322-323. "It is settled that 'the party invoking the Court's subject matter jurisdiction.'" *Casseus v. First Eagle, LLC*, 2008 WL 1782363, at *1 (S.D. Fla. Apr. 18, 2008) (quotation omitted). In the instant case, because no genuine issue of material fact exists as to subject matter jurisdiction under the FLSA, Defendants are entitled to summary judgment as a matter of law.

## **FLSA Coverage**

Plaintiff has not and cannot meet the threshold of coverage issues for either enterprise or individual coverage. Defendants do not satisfy the $500,000 revenue threshold for enterprise

coverage and Plaintiff cannot satisfy the interstate commerce requirements for FLSA individual coverage.

In assessing individual and enterprise coverage, Congress intends to "regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing *McLeod v. Threlkheld*, 319 U.S. 491, 497 (1943)). Practical considering guide when determining what constitutes commerce or engaging in commerce. *Overstreet v. N. Shore Corp.*, 318 U.S. 125, 128 (1943).

For individual coverage, an employee must "directly participat[e] in the actual movements of persons or things in interstate commerce." *Thorne*, 448 F.3d at 1266; *see N.M. Pub Serv. Co. v. Engel*, 145 F.2d 636, 638 (10th Cir. 1994) ("[T]o be engaged in commerce within the meaning of that phrase, an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof."). To determine whether an employee is engaged in commerce we look at her activities, not the business of her employer. *See Mitchell v, Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Isolated or sporadic activities do not satisfy this requirement.

**<u>Anton Legal Group Is Not A Covered "Enterprise" Under The FLSA</u>**

The undisputed evidence proves that the annual sales for Anton Legal Group during the relevant period were less than $500,000, a fact that is fatal to establishing enterprise coverage. Specifically, the 2012 and 2013 gross receipts for Anton Legal Group totaling $421,288 and $359,327, respectively, demonstrate that the minimum threshold has not been met. *See* Anton Affid. Ex. A, ¶7. Thus, the firm is not a covered enterprise under §203(s)(1)(A). *See Thongsodchareondee v. King Kone Food, Inc.*, Case No. 10-cv-23763-JLK (S.D. Fla. Jul. 21, 2011) (granting restaurant's motion for summary judgment where financial statement and

declaration established company never exceeded $500,000 in annual revenues despite cook's conclusory contention with financial statements); *Hernandez v. Nanju Corp.*, Case No. 07-227986-civ-Moreno (S.D. Fla. Apr. 30, 2008) (granting restaurant's summary judgment where tax returns showed less than $500,000 in gross sales, holding that short order cook lacked personal knowledge of actual revenue, despite knowing average amount of food prepared, where cook's affidavit only included his own speculative beliefs in attempting to contradict the defendants' affidavit and tax returns); *Lopex v. Top Chef Investment, Inc.*, 2007 WL 4247646 at *3 (S.D. Fla. Nov. 30, 2007) (granting summary judgment to employer and rejecting plaintiff's conclusory assertions that the employer had gross revenue that exceeded $500,000 annually, and accepting the figures on the defendant's tax returns in determining that enterprise coverage was not applicable); *Severin v. Pasha's Restaurant's Inc.*, 2007 U.S. Dist. LEXIS 24832 (S.D. Fla. Mar. 21, 2007) (granting restaurant's summary judgment where annual earnings were below $500,000 and rejecting the plaintiff's argument that if defendant's earnings for a partial year were extrapolated to a full year, it would total over $500,000).

**Joint Enterprise Issue**

Although Plaintiff alleges in paragraph 12 of her Complaint that Anton Legal and its Real Estate company clients are "joint employers of Jenkins under the FLSA," the sworn testimony and evidence clearly demonstrates that this is not the case. While David Anton is one of the shareholders of the real estate companies, Anton Legal Group and the real estate companies have no relationship apart from the real estate companies being clients of Anton Legal Group. This attorney-client agreement includes David Anton acting as registered agent for the companies and Anton Legal Group rendering services for which it is paid a yearly retainer.

It is clear that while Plaintiff does not know what business relationship exists, if any, between Anton Legal Group and the real estate companies, (Jenkins Depo. P. 9) the only business relationship that does exist, is an attorney-client relationship. (Anton Affid. ¶18, Chad Affid. ¶3). It is further clear that the real estate companies exercised no control over Plaintiff or over any of Anton Legal Group's employees. (Anton Affid. ¶19, Chad Affid. ¶¶1-11). The real estate companies are operated out of 1608 East 5th Avenue, Tampa, Florida under the direction of Richard Chad, who has no involvement in Anton Legal Group. (Anton Affid. ¶19, Chad Affid. ¶¶4-5). The real estate companies did not direct the work of any Anton Legal employee including Plaintiff, did not control work schedules of any such employee including Plaintiff, did not determine rate or method of pay for any such employee including Plaintiff, did not maintain employment records for any such employee including Plaintiff, and had absolutely nothing to do with overseeing or supervising any such employee including Plaintiff. (Anton Affid. ¶20, Chad Affid. ¶8-11). In addition, the real estate companies and Anton Legal do not share a single common business purpose nor do either have similar interests or objections. (Anton Affid. ¶21, Chad Affid. ¶¶6-7). The real estate companies' business model is to own and manage several properties in the Tampa Bay area. (Chad Affid. ¶¶4, 7). Anton Legal group on the other hand is a law firm engaged in the practice of law. The fact that two to three tenants per month drop off a rent check that would take less than two (2) minutes of Plaintiff's time (Jenkins Depo. pp. 19-20) does not lessen this fact. While Defendants acknowledge that the test for determining whether a joint enterprise exists is flexible (See *Cornell v. CF Ctr.*, LLC 410 Fed Appx 265, 268 (11th Cir. 2011) the facts being relied upon by Plaintiff to establish coverage are deficient.

In *Gonzalez v. Old Lishon Rest. & Bar, LLC,* 820 F Supp. 2d 1365 (SD Fla. 2011) the court held that in order to find enterprise coverage, a Plaintiff must present facts that the two separate

businesses "(1) performed related activities, (2) through a unified operation or common control, and (3) for a common business purpose." *Id.* at 1368, citing *Donovan v. Easton Land & Dev, Inc.* 773 F2d 1549, 1551 (11th Cir. 1984) and *Jimenez v. Southern Parking, Inc.*, 2008 WL 4279618 at 9 (SD Fla. 2008). While the *Gonzalez* court recognized that element 2; unified operations or common control was properly alleged, the fact that no facts were presented that supported elements 1 and 3 required dismissal.

Element 1, that the separate businesses "performed related activities," cannot be shown by Plaintiff. "Activities are related when they are the same or similar or when they are auxiliary and service activities". *Vignoli v. Clifton Apt. Inc.*,930 F Supp. 2d 1342, 1346 (SD Fla. 2013) quoting *Donovan* at 1551. Plaintiff cannot even approach their burden with respect to this element.

Element 2, "unified operations or common control," exists "where the alleged employer hires and fires employees, supervises and controls employee work schedules or conditions of employment, determine the rate and method of payment, or maintains employment records." *Vignoli* at 1346 quoting *Ceant v. Aventura Limousine & Transp. Serv. Inc.*, 874 F Supp. 2d 1373, 1381 (SD Fla. 2012). Here, the various real estate companies are run by Richard Chad, who has testified that he has no control over any Anton Legal Group employee.

Element 3, that the two entities are run "for a common business purpose," likewise cannot be met. "Business purposes are common when the activities of two or more businesses are 'directed to the same business objective or to similar objectives in which the group has an interest.'" *Vignoli* at 1346 citing 29 CFR 779.213. Here, one (1) business purpose is to operate and manage real property, the other is to engage in the practice of law. Plaintiff has therefore failed to meet her burden as to element 3 as well.

Because Plaintiff cannot establish facts supporting a single one of the elements for FLSA joint enterprise, much less establish all three as she is required to do, Plaintiff's theory of joint enterprise coverage must fail. Therefore, the Court is left with Anton Legal Group revenue alone for determining FLSA enterprise coverage. As such revenue is below the $500,000 threshold for all relevant years, liability under an enterprise coverage argument must fail.

**Plaintiff Is Not Covered As An Individual Under The FLSA**

Even if an employer is not a covered enterprise, an employee may be covered individually under the FLSA if the employee is "engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207(a)(1). "The burden of proof lies with employees to establish that they were engaged in commerce, or in the production of goods, and that such production was for interstate commerce." Kitchings v. Florida United Methodist Children's Home, Inc., 393 F. Supp. 2d 1282, 1292 n.25 (MD Fla. 2005).

Under the individual coverage jurisprudence, "commerce" and "interstate commerce" are narrower terms of art than in other areas of Commerce Clause jurisprudence. As the Supreme Court has clarified, in enacting the FLSA, Congress did not intend to exercise the full extent of its constitutional regulatory powers, and clearly intended to exempt local businesses. *Walling v. Jacksonville Paper Co.,* 317 U.S. 564, 571 (1943).

In determining whether an employee is a covered individual under the FLSA, the primary focus is on "activities of the employee and not the business of the employer." *Mitchell v. Lublin McGaughny & Assocs.*, 358 U.S. 207, 209 (1959). In *Thorne,* the Eleventh Circuit held that for an employee to be "engaged in commerce," the employee must be "directly participating in the actual movement of persons or things in interstate commerce." 448 F.3d at 1266. Furthermore, in addition to the requirement of direct participation, for an employee to be engaged in commerce, "a

**substantial** part of the employee's work must be related to interstate commerce." *Kitchings*, 393 F. Supp. 2d at 1293, n.26 quoting *Boekemeier v. Fourth Universalist Soc'y in the City of New York*, 86 F. Supp. 2d 280, 287 (SD NY 2000)) (emphasis added).

Plaintiff Jenkins was not engaged in commerce or the production of goods for commerce during her employment with the firm and thus was not and is not covered as an individual under the FLSA. *See Reed v. Mycopharma, Inc.*, 2000 WL 1131953, at *3 (ND Ill. Aug. 9, 2000) (granting summary judgment to the employer finding that the plaintiffs, whose work duties included ordering supplies for the laboratory from out of state and setting up and maintaining the laboratory, were not engaged in interstate commerce and thus not covered individually under the FLSA).

Plaintiff Jenkins attempts to claim individual coverage based on a handful of phone calls and emails with out of state attorneys or witnesses and with firm clients who were temporarily out of state for either job assignments or vacations. (Jenkins Depo. pp. 52-65). It is uncontroverted however that all of these calls and emails are related to an in-state litigation or arbitration. (Jenkins Depo. p. 46; Anton Affid. ¶3, Hayes Affid. ¶4). In *Dent v. Giamo,* 606 F Supp 2d 1357 (SD Fla 2009) Judge Ryskamp addressed an employee's argument that she regularly engaged in interstate commerce based on her claim that 70% of the doctor's office patients were from out of state and that as part of her duties, she regularly had interstate phone calls with the patients, she "verified insurance coverage with out of state carriers and she regularly sent and received out-of-state faxes. *Id.* at 1358. The *Dent* court held that in regards to the fact that many patients were not Florida residents, ultimate-consumer doctrine, which states that goods are no longer in the stream of commerce once obtained by the ultimate consumer, applies. *Id.* at 1361. The fact that the doctor practiced only in Florida, he did not solicit out of state and that contact with patients when they

were out of state was not regular or recurrent, it was clear that the practice was local and not interstate. *Id.* The *Dent* court then held; "that plaintiff's use of telephone or facsimile machines to make long distance phone calls or use of the internet and credit cards is insufficient to establish jurisdiction." To be considered 'engaged in interstate commerce' a business must use a credit and specifically to transact business in interstate commerce. Here, dependent has submitted sufficient evidence to show that his practice is a local enterprise." *Id.* citing *Polycarpe v. E&S Landscaping Serv. Inc.,* 572 F Supp. 2d 1318, 1321-22 (SD Fla. 2008). The *Dent* court went on to find that "the fact that the Defendant company provided services of an exclusively local nature is dispositive." *Dent* at 1361 quoting from *Polycarpe* 572 F. Supp. 2d at 1322.

As for the number and frequency of Plaintiff's interstate phone calls, the handful claimed by Plaintiff are clearly insufficient. In *Mayor v. Jean Nicole Hair Salons, Inc.,* 2015 WL 4711202 pg. 2 (MD Fla 2015) the court found that the Plaintiff's claim of out of state phone calls to clients that occurred around once per week was inadequate to constitute interstate commerce. Similarly, in *Curry v. High Springs Family Practice and Diagnostic Center, Inc.*, 2009 WL 3163221, pp. 3-4 (N.D. Fla. 2009) the court found 29 out of state phone calls in a 2 ½ month period (almost three per week) inadequate to be considered interstate commerce for individual coverage purposes.

Similarly, Plaintiff's internet usage for legal research should not be considered interstate commerce for the purpose of individual coverage as Plaintiff and the law firm were end users. In *Kitchens v., Fla. United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282 (M.D. Fla. 2005), the court did not find individual coverage based on the employee's regular use of the internet for helping clients with school work nor considered interstate commerce for individual coverage issues. *See also Curry*, 2009 WL 3163221, p. 3 (use of internet did not show interstate commerce), *Dent*, 606 F. Supp. 2d at 1361 (rejecting plaintiff's claimed regular use of the internet as a basis

for FLSA individual coverage) and *Dean v. Pacific Bellweather LLC*, 996 F. Supp. 2d 1044, 1049 (D. N. Mar. I. 2014) (finding a cook's regular use of internet to research recipes was not interstate commerce for FLSA individual coverage purposes as research was end user activity).

Notably, after *Thorne v. All Restoration Serv., Inc.*, 448 F.3d 1264 (11th Cir. 2006), numerous district courts in Florida have readily granted summary judgment in favor of employers based on the employee's failure to prove their direct participation in the actual movement of people or goods in interstate commerce. *See Dent v. Giamo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (granting summary judgment to employer even though 70% of employer's patients were not residents of Florida, noting "goods are no longer in the stream of commerce once obtained by the ultimate consumer thereof" and evidence showed that employer's contact with those patients was primarily local); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008) (granting summary judgment to employer even though plaintiff picked up automobile parts that had traveled in interstate commerce), *aff'd*, 2008 WL 2315869 (11th Cir. June 6, 2008), *cert. denied*, --S.Ct.--, 2008 WL 4144447 (2008); *Scott v, Max Investments, Inc.*, 2007 WL 423080 (M.D. Fla. Feb. 6, 2007) (the fact that plaintiff "may have handled building materials that had previously traveled in interstate commerce" is insufficient to establish individual coverage).

The undisputed facts here amply demonstrate that Plaintiff Jenkins was not involved in any manner in the actual movements of persons or goods in interstate commerce, much less that such participation was sufficiently substantial as needed to support a finding of individual coverage under the FLSA. *Dent*, 606 F. Supp. 2d at 1361 (holding that plaintiff was not covered individually under the FLSA because she "failed to show that she **regularly and recurrently** engaged in interstate commerce") (emphasis added).

Defendants also expect Plaintiff to argue that the FLSA individually covered her because she used the telephone, internet, and/or facsimile machine to contain out-of-state individuals or companies and she processed the customers' credit cards payments. However, the court in *Dent* rejected these very arguments and concluded:

> This Court holds that plaintiff's use of the telephone or facsimile machines to make long distance phone calls or use of the internet and credit cards is insufficient to establish jurisdiction. To be considered "engaged in commerce" a business must use a credit card ***specifically to transact business in interstate commerce.*** Here, defendant has submitted sufficient evidence to show that his practice is a local enterprise ***"and the items used in the business proliferated this goal of local service."*** *Polycarpe v. E *S Landscaping Serv., Inc.*, 572 F.Supp.2d 1318, 1321-22 (S.D. Fla. 2008). This also appears to be the case in regards to internet usage. *Pierre C. Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F.Supp.2d 1312 (S.D. Fla. 2008). "The fact that the Defendant Company provides services of an exclusively local nature is dispositive." *Polycarpe* at 1322.

*Id.* at 1361 (emphasis added).

Essentially, *Dent* instructs that where, as here, the employer's primary business is local, an employee's mere use of certain instrumentalities of commerce, such as a phone, fax, internet, or credit card machine to proliferate the goal of local service will not be sufficient to create individual coverage under the FLSA. *See Id.* (finding no individual coverage where 70% of defendants' patients were not residents of Florida, noting the "contact with those patients was primarily local," the defendant only worked within Florida and "there is no evidence to suggest the defendant solicited business from patients while they were out of state or that any contact with out of state patients was regular or recurrent"). Based on the foregoing, Defendants have established a lack of genuine issue of material fact regarding individual coverage under the FLSA. Accordingly, this Court should enter Summary Judgment in Defendants' favor.

## Conclusion

Based on the foregoing, Plaintiff cannot demonstrate that the FLSA covers the instant case through either enterprise or individual coverage. Therefore, Defendants respectfully request this Honorable Court enter an order granting summary judgment in favor of the Defendants, dismiss Plaintiff's Complaint in its entirety and with prejudice, and award Defendants their fees and costs incurred in the defense of this matter.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via the CM/ECF system which will send a notice of electronic filing to the following: **Yvette D. Everhart, Esq.** c/o Law Offices of Cynthia N. Sass, 601 W. Dr. MLK Jr. Blvd., Tampa, FL 33606, this 4th day of November, 2016.

*/s/* James M. Thompson
**James M. Thompson, Esq.**
Florida Bar No.: 0861080
jmthompsonlegal@gmail.com
**Kathryn C. Hopkinson Esq.**
Florida Bar No.: 0102666
khthompsonlegal@gmail.com
mkthompsonlegal@gmail.com

THOMPSON LEGAL CENTER, LLC

One Harbour Place
777 S. Harbour Island Blvd., STE. 245
Tampa, Florida 33602
(813) 769-3900 ▪ (813) 425-3999 Fax

*Counselors for the Defendants*