# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

JENNIFER JENKINS,

    Plaintiff,

v.                                    Case No: 8:15-cv-283-T-30AEP

S. DAVID ANTON, P.A. and
S. DAVID ANTON,

    Defendants.

## ORDER

THIS CAUSE came before the Court for non-jury trial on February 22, February 23, March 22, March 23, and March 24, 2017. Jennifer Jenkins claims that S. David Anton, P.A. failed to pay her overtime compensation to which she was entitled under the Fair Labor Standards Act ("FLSA"). Anton disputes that Jenkins worked more than forty hours in a work week. Having heard the testimony of the parties and their witnesses, and having reviewed the documentary evidence, the Court concludes that judgment should be entered for Defendant Anton. The Court finds Anton's testimony more credible because it better matches the other evidence in the case, particularly the testimony of other employees.

To support a claim for overtime compensation, an employee must: (1) establish either enterprise coverage or individual coverage under the FLSA, 29 U.S.C. § 207(a)(1), and (2) prove she worked more than forty hours in a work week. Jenkins concedes that enterprise coverage does not apply to this case, but contends that individual coverage does.

Individual coverage exists where an employee regularly uses the instrumentalities of interstate commerce in her work, e.g., makes regular and recurrent use of interstate telephone, telegraph, mails, or travel. *Thorne v. All Restoration Services, Inc.*, 448 Fed. 3d 1264 (11th Cir. 2006). It is unnecessary for the Court to decide this issue since, even if there were individual coverage, Jenkins' claim fails because the Court finds she did not work more than forty hours in any given work week.

## Discussion

Jenkins worked for Anton for nine months from February 11, 2013, until November 4, 2013. She was a single mother with two children, ages seventeen and twenty. Her seventeen-year-old daughter was a senior in high school graduating at the end of May. Her twenty-year-old son was a student at St. Petersburg Junior College. Both children lived with Jenkins in St. Petersburg, Florida. Anton's office was, and is, in Tampa, Florida, between forty-five minutes to an hour away depending on traffic.

Jenkins was an active and attentive mother. She planned graduation events for her daughter in May and helped her move when she began college in August of 2013 at the University of Central Florida in Orlando. Jenkins was co-chair of the Public Affairs Committee of the Junior League. As such, she helped plan a Tiger Bay luncheon, a well-known political event, during her time of employment with Anton. And she was a full-time student at the University of South Florida scheduled to graduate with a B.A. in May 2013. Her class schedule was:

    Economics:             Monday, 6:20 p.m. to 9:30 p.m. – Tampa campus

    Conflict in the World:   Tuesday, 6:00 p.m. to 8:50 p.m. – St. Petersburg campus

2

      Senior Seminar:        Wednesday, 6:00 p.m. to 8:55 p.m. – St. Petersburg campus

      Environmental Law:    Thursday, 6:00 p.m. to 6:50 p.m. – Sarasota campus (online with 4 classes)

Jenkins says she only attended nine of these classes.

    Jenkins presented an excellent resume at her first hiring interview with Anton. She had thirteen years' experience as a family law paralegal. She was technologically savvy and well versed in various computer applications. She understood the office hours were 8:30 a.m. to 5:15 p.m., Monday through Friday. Anton explained that his office was not a busy one and overtime would probably not be necessary. The contract he presented for her to sign provided that overtime would not be paid. But Anton told her that if overtime became absolutely necessary, he would pay it. He said that in the past fifteen years or so, overtime had been claimed on rare occasions, like when he moved his office, and he paid whatever amount of overtime was claimed. He also explained that Yvette Rodriguez, the paralegal Jenkins was replacing, never worked more than forty hours a week even though she was out frequently with medical issues.[1]

    Also at this interview, Anton gave Jenkins a handwritten list of his pending cases, seventeen in all, comprised of four securities cases and thirteen family law cases. Two of the securities cases involved little to no work because one was almost completed and a second involved an unlicensed investment advisor who filed bankruptcy shortly after

---

[1] Jenkins said there was a backlog of work when she began because Rodriguez had been in the hospital for a few weeks. She claims this backlog required her to work overtime. The Court discounts this testimony because, first, there were only seventeen pending cases at the time, and, second, the other employee during that time period testified that work was so slow that Jenkins had no extra work for her to do.

3

Jenkins started. The average security case took about as much time as a complex divorce case.

Jenkins claims that every day she would arrive at work by 8:00 to 8:15 a.m. and would stay until 6:30 p.m. to midnight. She also worked through lunch every day and on some weekends. Anton disputes this. Anton says that Jenkins' fixed work time soon became a relaxed schedule where she would take time off as needed and then try to make up the time either by working through lunch or staying late.[2] Anton did not keep track of the time off or the make-up time, leaving that to her.

Jenkins had a busy schedule outside of work. In addition to the normal duties of a mother, she had her own school classes, planned and attended events for her daughter's graduation, helped her daughter move to college, planned a Junior League luncheon, went to court to fight an eviction action, had to take several days off to move after the eviction, and planned her son's birthday. During her employment, she was sick twice and frequently late to work because of traffic from St. Petersburg.

As he did with make-up time, Anton did not keep records of when Jenkins arrived or left. He never thought she worked more than forty hours in a work week. She never mentioned to him that she worked more than forty hours or that she thought she was entitled to overtime. His office has a glass wall between his desk and Jenkins' work space.[3] He

---

[2] Jenkins was not entitled to take vacation time until she had worked six months at the job.

[3] A picture taken from Anton's office is in evidence as Defendant's Exhibit 3. It demonstrates a clear view of Jenkins' work space, the desk on the right.

saw her studying at her desk on several occasions. And she did not seem to be overly busy or stressed.

Jenkins was the first employee Anton ever had that had access to her work computer through her smart phone and iPad. This was one of the technological "upgrades" that Jenkins had touted in her interview. She placed into evidence numerous emails and texts that she sent to Anton after business hours. Many of these were short messages about a client email that she had accessed from the office server while at home. None of these would have taken more than two or three minutes to draft. Other after-hours messages were of a personal nature or asking for time off. Some concerned an alimony bill that was pending in the Florida Legislature. Anton had not asked her to follow this bill but she had taken a personal interest in it and followed it until it was, in her words, "vetoed" by the Governor. While it is true that these after-hours messages should have alerted Anton to the fact that Jenkins was accessing her work email after-hours, there was no showing that these messages would indicate that she was working more than 40 hours in a week. The messages, and his responses to them, were brief.

The closest Jenkins came to proving overtime hours was the week of May 20, 2013. A securities case, the "APP case," involved an arbitration hearing from Tuesday, May 21, through Friday, May 24, 2013. Jenkins asked if she could attend the hearings and Anton agreed. Jenkins claims that she worked on the Saturday before the hearing, long hours on the Monday prior to the hearing, attended each arbitration session, and worked at home each night: Monday through Thursday. The arbitration hearing was three hours in the morning and three hours in the afternoon. In between sessions, they had lunch together

5

with the attending expert. She considered these "working lunches" because they generally would discuss what happened during the morning session.

But the evidence does not support the claimed overtime, even for that week. Jenkins took off a day and a half the prior week to plan for her daughter's graduation. The time she worked Saturday did not make up for the previously taken time off. The following Monday, her claim that she worked late was conclusory. She did not identify any work that she actually performed. And the hearings that took place Tuesday through Friday of that week were six hours of work each day. Her contention that lunch each day was a "working lunch" is unsupported. She does not identify any work that was performed. She only testified that during lunch they talked about the events of the morning. General lunch conversation touching upon the only topic in common with the attending expert does not constitute "work." Her claim for working Tuesday, Wednesday and Thursday nights fails for the same reason as the claim for Monday night: she identified no particular work that was performed.

In September 2013, Anton told Jenkins she was being terminated, but she could stay on for another month or so to look for another job. Following this termination conversation, Jenkins told the bookkeeper, Lynn Hayes, "Can you believe David just tried to fire me?" About a month later, on October 22, 2013, Jenkins for the first time mentioned the word "overtime." That was in an email sent during the evening in response to the draft of a recommendation letter Anton had prepared at her request. Her email criticized the wording as not being sufficiently effusive in his description of her work and mentioned as one of her attributes that she worked "extensive overtime." Coincidentally,

6

earlier that same day at 5:45 p.m., Jenkins had printed a copy of her time records from her work computer.

Jenkins originally claimed more than 1,074 hours of overtime, 774 hours in office and more than 300 hours out of the office. By the time of trial, after "again reviewing all of the documents and the GPS records from my phone,"[4] she reduced the overtime claim to 711 hours. She contends these hours were expended during 32 weeks: the 38 weeks of her employment less the 6 weeks in which there was a holiday. Spread over the 32 weeks, this is a claim of 62 working hours each week. Spread over the full 38 weeks of employment, this represents a claim of almost 59 working hours each week.[5]

Anton states that Jenkins did not work more than forty hours per week. He testified that he has consistently carried about fifteen to twenty cases at any one time, and, until 2016, always had about the same proportion of family law and securities cases. He says that, if anything, the year 2013 was slower than usual. He and his paralegals kept time records for the cases that were billable by the hour, primarily the family law cases. The one exception was Jenkins, who additionally inputted some of her time on the non-hourly billable cases. It is telling that the total hours Anton and his paralegal recorded for each year were:

    2011:        1,883 hours

---

[4] The GPS records were not in evidence.

[5] The Court notes that at least six of these weeks were after Jenkins knew she was being terminated.

      2012:        1,809 hours

      2013:        1,442 hours

      2014:        1,851 hours

Anton also points to an email sent by Jenkins to an opposing counsel demonstrating that, as of September 12, 2013, his calendar was completely open November 12, 14, 15, 18, 19, 20, 21, and 22.  The office was not busy.

      This description of the practice was consistent with the testimony of Lynn Hayes, the bookkeeper.  She was hired February 1, 2013, shortly before Jenkins.  She worked eight hours per week:  Tuesdays, 12:00 p.m. to 4:00 p.m., and Fridays, 10:00 a.m. to 2:00 p.m.  She worked on a contract basis for several other family law attorneys as well.  She testified that Anton's practice was not busy compared to the others.

      Hayes' desk was near Jenkins' desk and they were friendly with each other.  They would talk about personal matters.  Hayes did not notice Jenkins working through lunch. Jenkins knew that Hayes was in charge of sending the payroll information to an outside company that would cut the paychecks.  Jenkins never told Hayes that she was working long hours or even mentioned the word overtime.  And, Hayes said, Jenkins always seemed calm, not harried, and not as busy as the paralegals at the other firms.

      Jenkins' last day of employment was November 4, 2013.  That was the first day of employment for her replacement, Samantha Neides.  Neides had worked for the Anton office previously—not for Anton, but for Brent Rose, an associate attorney.  Neides had worked as a receptionist for three or four months for another law firm before working for Rose as a secretarial type employee.  Rose was in the process of ending his association

8

with Anton at the time Jenkins was hired. Rose was not busy enough to pay his overhead at Anton's office so, in March 2013, he began working out of his home. Neides was kept on by Anton for another six weeks to two months, until the middle of May, to look for another job.

Neides was in the office for the first three months of Jenkins' employment. She did basically busy work, like cleaning the library and closing files, because there was not enough other work for her to do. She did not do paralegal work because Jenkins did not need the help. Neides used the same reception area, coffee machine, file cabinet, phone system, conference room, and kitchen as Jenkins. She could see how busy the office was. She testified that there did not appear to be enough work to require Jenkins to work more than forty hours a week. Jenkins' workload was "not particularly heavy." Jenkins never mentioned to her that she was working extra hours or missing classes.

In October 2013, Neides responded to an ad placed by Anton seeking a paralegal. She was going to law school at the time. She agreed to work as a paralegal until she became a lawyer and then see if she could build a practice with Anton. She worked with Anton as a paralegal for about one and a half years before working as a lawyer. She had no prior paralegal experience. When she started on November 4, 2013, the workload was light – about twelve to fifteen cases. During her time as a paralegal, she testified that she never worked past 5:15 p.m. She never worked through lunch. And she never worked on a weekend.

Neides worked with Anton until February of 2016, when she married and moved to Miami where she now practices law. She did not stay in touch with Anton after she left.

9

Anton hired Kay Schnake to replace Neides as a paralegal. At the time of trial, Schnake was still Anton's paralegal. Schnake testified that Anton's current caseload was about fifteen or so cases, mostly family law. She does not come close to working forty hours a week and has never worked overtime because there is not enough work to require her to do so.

## Conclusion

The Court finds Anton's testimony to be credible. The Court further finds that Jenkins has not proven that she has worked more than forty hours a week and, therefore, is not entitled to overtime compensation.

It is therefore ORDERED AND ADJUDGED that:

1. The Clerk is directed to enter judgment in favor of the Defendants, S. DAVID ANTON, P.A. and S. DAVID ANTON, and against Plaintiff, JENNIFER JENKINS.

2. The oral Motions for Directed Verdict (Dkts. #90 and #94) are DENIED.

3. The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of April, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record