**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JENNIFER JENKINS,
Plaintiff,

vs. Case No.: 8:15-CV-00283-JSM-AEP

S. DAVID ANTON, P.A. d/b/a
ANTON LEGAL GROUP and
S. DAVID ANTON, an individual,
Defendants.
_______________________________________/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTION TO ALTER OR AMEND JUDGMENT OR FOR**
**A NEW TRIAL, AND/OR ALTERNATIVELY, RELIEF FROM JUDGMENT (Dkt. 106)**

**COME NOW** the Defendants, by and through their undersigned counsel, and hereby respond to Plaintiff's Motion to Alter or Amend Judgment or for a New Trial, and/or Alternatively, Relief from Judgment (Dkt. 106), as follows:

## Summary of the Argument

Plaintiff seeks a new trial based on "newly discovered" evidence and based on her failure to call an impeachment witness. Because the alleged "new" evidence as well as the impeachment witness were for the purpose of impeachment only, Plaintiff has failed in her burden to even state a procedural or legal justification for a new trial under Rule 59. Similarly, Plaintiff's argument that she presented evidence of at least one week of overtime is merely a rehashing of her arguments already made at trial and ruled upon by this Court and do not rise to a Rule 59 or Rule 60 standard.

## Case History and Facts

1. The matter before this Court was an unpaid overtime wages claim pursuant to the Fair Labor Standards Act of 1938, as amended ("FLSA").

2. This matter was first scheduled for trial for three (3) days beginning Wednesday, February 22, 2017. After one full day of trial (February 22, 2017), at the request of Plaintiff's counsel, the Court continued the matter until one (1) month later wherein the trial resumed on Wednesday, March 22, 2107, for two and one-half additional days, which included the following Thursday and Friday morning.

3. After the conclusion of the three and one-half day trial, on April 3, 2017, this Court issued an Order which contained findings of fact and a judgment in favor of the Defendants (Dkt. 98).

4. On May 2, 2017, Plaintiff filed her currently pending post-judgment motion (Dkt. 106) to which Defendants' are hereby responding. Plaintiff's motion argues three (3) separate points which are, as much as reasonably possible, addressed separately below.

**Unavailability of Witness, Yvette Rodriguez**

5. Plaintiff's proposed witness, Yvette Rodriguez, was never known to, nor disclosed to Defendants. The first time Defendants were ever aware that Ms. Rodriguez was to be called as a witness was when the Plaintiff's currently pending post-judgment motion was filed on May 2, 2017. Ms. Rodriguez was never mentioned as a witness at any time during the trial (including during the one (1) month recess) and was never mentioned as a witness at the conclusion of the trial. Ms. Rodriguez's name does not appear on either the Plaintiff's witness list nor the Defendants' witness list, copies of which are attached as Exhibit "A". No Subpoena is known to have been issued for this witness. All of this despite the fact that Plaintiff originally allegedly coordinated the testimony of Ms. Rodriguez to take place on either February 22, 2017, or February 23, 2017, which were the first two original days of the trial (See Paragraph 3 of Plaintiff's motion). Thereafter, at Plaintiff's request, the trial was continued for approximately one month prior to its

restart date. No mention was made of Ms. Rodriguez as a potential witness during this one month delay. Because Ms. Rodriguez resides in Cook County, Illinois (See paragraph 3 of Ms. Rodriguez's Affidavit) the Plaintiff had to have known about Ms. Rodriguez as a potential witness significantly prior to the first day of trial. As such, Ms. Rodriguez was a secret, known but undisclosed witness and Plaintiff was engaging in trial-by-ambush. If it matters, Ms. Rodriguez was not an unknown or rebuttal witness for Plaintiff because her testimony had to have been planned prior to the trial and certainly prior to the continuation of the trial. In addition, Plaintiff was well aware that Defendants' position was that overtime hours were not needed nor worked in the offices of the Anton Legal Group during the months prior to Ms. Jenkins' employment as well as during and after Ms. Jenkins' employment. See pages 15, 16 and 34 of the deposition of David Anton dated January 11, 2016, which are attached as Exhibit "B". It is also telling that Plaintiff never mentioned her unsuccessful attempts to secure Ms. Rodriguez as a trial witness, nor requested a continuance, nor requested any other accommodations allowing the Court to hear Ms. Rodriquez' testimony prior to the rendering of the Court's unfavorable decision towards Plaintiff. Instead Plaintiff waited for the Court's decision and only after it was unfavorable to her, did she make an issue of her supposedly unavailable and undisclosed witness. Plaintiff now seeks a second bite at the apple after the rendering of the Court's decision.

6. Defendants are improperly denied the opportunity to cross-examine Ms. Rodriguez (her affidavit) in any way, shape or form. Further, the Defendant, S. David Anton, attempted to contact Ms. Rodriguez near immediately after receiving Plaintiff's motion which had the purported Affidavit of Ms. Rodriguez attached. Five telephone calls were placed during May 4 and May 5, 2017 to the phone number listed on the Affidavit as the phone number of Ms. Rodriguez. In addition, two separate emails were sent by S. David Anton to Ms. Rodriguez to the email address

listed on the Affidavit as the email address of Ms. Rodriguez. A copy of these two emails are attached as Exhibit "C." No response was ever received.

7. The Plaintiff takes the position that the missing testimony of Yvette Rodriguez is somehow "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" as is referenced in Federal Rule of Civil Procedure 60(b)(2).

8. This cannot be the case given the fact, as discussed above, that Plaintiff was well aware of Ms. Rodriguez's potential testimony well before even the first day of trial.

9. The Affidavit of Yvette Rodriguez contains numerous inconsistencies and even physical impossibilities. In her purported affidavit, Ms. Rodriguez states that her "payroll year" runs from January 1 through December 31 (See paragraph 8). She further states that she was paid two times per month on the 1st and 15th of each month (See paragraph 8). She further states that "due to an extended hospitalization" she was unable to work during the last two weeks of January and the beginning week of February (See paragraph 8). She then states that she did work during two separate one-half days (not whole days) of February 12 and February 15 in order to train the new bookkeeper and paralegal hired by the Anton Legal Group (See paragraph 7). The Defendants agree with these statements concerning Ms. Rodriguez's hospitalization and absence from work during the second half of January and entire first week of February. Defendants also agree that Ms. Rodriguez did work for two separate one half days on February 12 and 15. Ms. Rodriguez then provides conflicting affidavit testimony that she worked from January 1 to January 21 and, during that time she earned 31 hours of overtime (See paragraph 9). Defendants do not agree with either the number of days worked or the overtime worked.

10. Ms. Rodriguez further states that she worked for the Anton Legal Group from July 11, 2012, through February 8, 2013, for approximately seven (7) total months (See paragraph 5). Defendants agree with these approximate employment dates. Ms. Rodriguez then states that she averaged approximately twenty hours of overtime per week during her seven months of employment (See paragraph 5). Defendants disagree. Ms. Rodriguez then states that she was the office manager and the paralegal for the Anton Legal Group (See paragraph 10). The Defendants agree. Ms. Rodriguez then states that while she was working an average of twenty hours per week of overtime during her tenure at the Anton Legal Group she was also raising four minor children at home, attending Saint Pete College and engaging in volunteer work (See paragraph 12).

11. In support of Ms. Rodriguez's allegations contained in her Affidavit a copy of a paystub purportedly showing hours worked and monies earned is provided, including year to date figures, for all her time with the Anton Legal Group during the calendar year 2013. A copy of this pay stub is attached here again as Exhibit "D". It should first be understood that, as the firm's bookkeeper, Ms. Rodriguez was solely responsible for preparing and reporting payroll for herself though such should have been reviewed by Mr. Anton. A review of the attached paystub shows that Ms. Rodriguez is claiming that she has worked or earned 287 hours of time during January and the first half of February of 2013 (three (3) bi-monthly pay periods). The 287 hours purportedly included 31 hours of overtime and 40 hours of sick time. All of this is physically impossible given the fact that both Defendants and Ms. Rodriguez agree that during 2013 she did work some amount of time during the first half of January, little or no time (depending on which portion of the Affidavit you believe) during the second half of January and no amount of time during February except for two separate one-half days wherein she provided training to the new employees. Again, it is physically impossible to work 287 hours or be entitled to 287 hours of workable time due to

the fact that she only worked for approximately the first half of January of that year. In addition, Ms. Rodriguez was not entitled to 40 hours of sick time for January and half of February of 2013. She was entitled to 40 hours of sick time on a calendar year, prorated basis only (40 hours X 3 out of 24 pay periods or 5 hours). See Ms. Rodriguez's employment agreement which was attached to Plaintiff's motion and which is now attached herein as Exhibit "E". S. David Anton does agree that to the best of his recollection he did pay Ms. Rodriguez for all of her normal pay for 40 hours of work per week during the first three pay periods of 2013 though she did not work anywhere near those hours. If the pay stubs represent what Defendants paid to Ms. Rodriguez it is because Ms. Rodriguez herself submitted the payroll as she was the bookkeeper during a time of significant employee change.

12. Plaintiff's Motion and Affidavit make some reference to the fact that Ms. Rodriguez may have pushed overtime from the prior pay period into the calendar year 2013. This was not a permitted practice and is not accurate. This is because Ms. Rodriguez was also sick and absent from work during most or all of the second half of December 2013. To show this, attached as Exhibit "F" is a copy of the Unemployment Compensation paperwork filed by Defendant, under oath, for Yvette Rodriguez, on March 1, 2013. This employer response was shared with Ms. Rodriguez at the time it was submitted. Page 2 shows some of the information typed into the form and page 4 shows all of the information but it is handwritten. The handwriting on the filing is hard to read and it is now quoted as follows:

> "Ms. Rodriguez performed satisfactorily when she was present. She missed a lot of work and the business cannot operate without her position being filled on a reliable basis. At the end of her employment the situation got worse and she missed worked approximately seven (7) days in December of 2012 and fifteen (15) days in January 2013. She was replaced by another new employee on February 11, 2013."

This sworn statement provided by Defendants to The Florida Department of Economic Opportunity significantly predated the current dispute between Plaintiff and Defendants. The filing was reviewed by Ms. Rodriguez who was in agreement with its wording. The wording states that Ms. Rodriguez missed seven days in December 2012 thus she could not reasonably have earned any significant overtime during the pay period which preceded her January of 2013, pay period. Finally, the last page of Exhibit "F" indicates that based upon this filing the Department of Economic Opportunity made a notice of determination as follows:

> "The Claimant left the job due to health reasons which have been substantiated."
> Also, "Quitting was for health reasons."

13. Defendant Anton now confirms his testimony during the trial which was that during the approximately seven (7) months that Ms. Rodriguez worked for Anton Legal Group she worked, on average, approximately twenty (20) hours per week. Ms. Rodriguez was significantly ill during much of her employment at Anton Legal Group, not just during the last four (4) pay periods or two (2) months. Even when she did appear for work, she often left early and often was unable to perform at her peak ability. If Ms. Rodriguez was paid any overtime it was based on the fact that she handled the payroll for Anton Legal Group.

14. During portions of January and February 2013, while Ms. Rodriguez was hospitalized and before her job was terminated, Anton Legal Group needed to replace her on a temporary basis. Diana Anton, step-mother of Defendant Anton, was previously employed as a paralegal in the City of Tampa for more than thirty (30) years prior to her retirement. She was hired for approximately ten (10) days during January and February of 2013, to assist with the paralegal needs of the Anton Legal Group. At no time did this temporary employee need to work more than eight (8) hours per day in order to deal with the necessities of the paralegal position at

Anton Legal Group during this timeframe. Ms. Rodriguez did not work during this period. An Affidavit of Diana Anton to this effect is attached as Exhibit "G".

15. Unfortunately, the Defendants have never been able to communicate with Yvette Rodriguez. This is directly due to the fact that her purported intended use as a witness by the Plaintiff in this matter was purposefully and completely hidden from the Defendants and because Defendants have been unable, despite due diligence, to contact Ms. Rodriguez since finding out about her purported role in this legal dispute.

16. The purported statements in Plaintiff's Motion about Yvette Rodriguez and the statements in Ms. Rodriguez's Affidavit directly conflict with and/or are inconsistent with the clear and unambiguous testimony of Defendant S. David Anton, Samantha Neides, Lynn Hayes, Kay Schnake and Diana Anton (by her attached Affidavit), as well as the Timeslips records entered into evidence at trial and a large additional amount of documentary evidence.

**Email between David Anton and Shane Ragland**

17. Plaintiff claims that she received an email sent between Defendant Anton and Shane Ragland (the IT contractor for Anton Legal Group) from an unknown source just days subsequent to the Court's rendered decision. Defendants now assert that this email, if real, could not have been obtained by Plaintiff by any legal means. It should first be noticed that the email is from Mr. Anton to Mr. Ragland and is not copied to anybody else. As such, this email would only normally be accessible to Mr. Anton and Mr. Ragland without considerable searching by an office insider. The only office insiders that could potentially have access to such an email would be Mr. Anton, Mr. Ragland, Kay Schnake (Defendant's current paralegal) and Lynn Hayes (Defendant's current bookkeeper). All of these persons previously provided testimony in this case under oath. It makes no sense that they would dig deeply into the computer system of Anton Legal Group and

find an email that they somehow already knew was not previously found by either Defendant Anton or Mr. Ragland. All four (4) of these individuals have signed affidavits stating that they did not send this email to Plaintiff. These affidavits are attached as the following Exhibits: Shane Ragland as Exhibit “I,” Kay Schnake as Exhibit “J,” Lynn Hayes as Exhibit “K” and David Anton as Exhibit “L”.

18. It should also be noted that there was significant trial testimony, with supporting exhibits, standing for the allegation that Plaintiff had secretly copied all the files (data) of Defendant Anton Legal Group. Many of Plaintiff’s exhibits came from this theft of protected information. Plaintiff, by her own admission, also copied all of the billing programs data just before she left. She then tried to show that the billing information provided by Lynn Hayes was incomplete when Ms. Jenkins had the same information in her own possession.

19. Shane Ragland, as discussed above, cannot find a copy of the email in question on his own phone and/or computer system (See his Affidavit attached as Exhibit “I”). Defendant Anton does not recall said email, though he does recall the factual situation which is generally referenced in the email. There was a time during late 2013 and/or early 2014 that Shane Ragland briefly worked with Samantha Neides to delete many emails out of the deleted folder at Anton Legal Group. This was done in order to free up storage space for a computer system which was slowing down to the point of near failure. In the past, such deletions had not taken place on a regular basis. There was substantial testimony about this topic by Samantha Neides (via deposition transcript highlighted and admitted into evidence with the Court) and Shane Ragland. Mr. Ragland’s deposition dated October 13, 2016, also contains many pages of discussions about these email deletions. See pages 41 through 61 of said deposition attached as Exhibit “H;” pages 58 through 61 may contain the most relevant statements. There was a time during the calendar year

2014 when there were discussions between Defendant Anton and Shane Ragland about a slowing computer system. Defendant Anton did suggest that perhaps there was some way to take actions which would free up the aging server but no actions were taken. Mr. Ragland generally advised that most of the problem would be better resolved by the purchase of more modern equipment. It was then decided that nothing further should be done and that Anton Legal Group would limp through the next period of time without making further deletions (Exhibit "I"). At that time, it was anticipated that this action would end more quickly than it did.

20. Despite the email deletions which were testified to by Samantha Neides and Shane Ragland, approximately 200 – 300 emails between Defendant Anton and the Plaintiff, as well as others, were provided during discovery. In addition, it was reasonably established during the trial that Plaintiff preplanned this action prior to her leaving by both copying all of the Timeslips program information and copying all or nearly all of the data of Anton Legal Group.

## PLAINTIFF'S CLAIM THAT SHE PROVED THAT SHE WORKED OVERTIME DURING ONE (1) WEEK OF HER EMPLOYMENT

20. On page 8 of Plaintiff's Motion Plaintiff claims that the Court made a manifest error when the Court found that she did not work overtime during the week of May 19, 2013. This was the week wherein Defendant acknowledged that Plaintiff worked approximately six (6) hours during the weekend. This was the weekend prior to the APP trial. Plaintiff takes the position that this weekend work must be added to the approximately forty-hour work week for the APP trial. The Court found that Plaintiff did not work more than forty (40) hours during the combined seven (7) days which included the week days prior to that weekend plus the weekend. Defendant Anton provided detailed testimony of the approximate amount of time that Plaintiff did not work during the five-day work week in question and the reasons provided by Plaintiff for taking the time off.

Defendant Anton further testified that when adding the seven-day week together, the time worked, including the time during the weekend, did not exceed forty (40) hours.

## MEMORANDUM OF LAW

While a court may reopen a trial upon a mistake of fact, clear error of law or newly discovered evidence, courts have held that "a trial court should be most reluctant to set aside that which it has previously decided." *Baucom v. Sisco Stevedoring*, LLC 208 WL2428930 pg. 3 (SD Ala 2008) citing *LiButti v. US*, 178 F 3rd 114, 118 (2nd Cir. 1999). In non-jury trials, "a motion for new trial should be based upon a manifest error of law or mistake of fact and should only (be) granted for "substantial reason." *Tampa Port. Author. v. M/V Dutchess*, 65 F. Supp. 2d 1303 (MD Fla. 1998).

While "newly discovered" evidence may be the basis for a new trial in some cases, it does not warrant a new trial under Rule 59 if it is "merely impeaching in nature." *41 Cases More or Less*, 420 F 2nd 1126, 1132 (5th Cir. 1970). In addition, the evidence must be material and not cumulative. *Id*. Put another way "newly discovered evidence, the effect of which is merely to discredit, contradict, or impeach a witness, does not afford a basis for granting of a new trial." *Davis v. Yellow Cab of St. Petersburg*, 220 F 2d 790, 792 (5th Cir. 1955).

In Plaintiff's Motion, Plaintiff claims entitlement to a new trial based on (1) Plaintiff's failure to present a witness, (2) Plaintiff's "discovery" of an email from Defendant David Anton to Shane Ragland and (3) Plaintiff's opinion that she established at least one (1) week of working overtime. As discussed below, each reason fails to provide grounds for a new trial.

### Witness Who Did Not Testify

Plaintiff argues that, due to unforeseen circumstances, a witness; Yvette Rodriguez, could not testify at trial. By Plaintiff's own admission, Ms. Rodriguez was not a newly discovered

witness as Plaintiff states that she had arranged for Ms. Rodriguez to testify by phone. (Dkt. 106, pg. 1, paragraph 3). In addition to not being newly discovered, Plaintiff admits that Ms. Rodriguez was to be used as "an impeachment witness to David Anton's testimony." Finally, Ms. Rodriguez was never listed as a witness by Plaintiff or by Defendants and when specifically asked who would testify on Plaintiff's behalf, Plaintiff's counsel never mentioned Ms. Rodriguez either before, during or immediately after trial. Plaintiff now complains that her trial-by-ambush strategy did not work. The failure to call Ms. Rodriguez does not establish grounds for a new trial under Rule 59 (or Rule 60) as it was not a "manifest error of law," was not a "mistake of fact," was not "newly discovered" and was merely an impeachment witness and was cumulative. Any one of the above reasons should preclude Ms. Rodriguez' non-appearance from being a consideration for a new trial. Moreover, Plaintiff's failure to list or even mention Ms. Rodriguez prior to, at or immediately following trial should preclude Plaintiff's argument for a new trial. See *Wolde-Giorgis v. Christianson,* 438 F Supp. 2d 1076, 1078 (D. Ariz. 2006) (explaining that the exclusion of witnesses identified and at eve of trial would not result in a miscarriage of justice that would warrant a new trial).

**"Newly Discovered" Email**

Apart from the fact that the "newly discovered" email merely confirms Shane Ragland's trial testimony that these were discussions about cleaning up Defendant Anton Legal's computers in order to speed them up, Mr. Ragland's attached affidavit makes it clear that these steps were not taken. Instead, Mr. Ragland advised that the issues would better be resolved by the purchase of modern equipment. (Ragland Affid.) Moreover, the "newly discovered" email, in addition to being cumulative, is proffered by Plaintiff as an impeachment exhibit. "Newly discovered evidence, the effect of which is merely to discredit, contradict or impeach a witness, does not afford a basis for

granting of a new trial." *Davis* at 792. Plaintiff has failed to meet the substantive and procedural requirements for a Rule 59 Motion based on the supposed "newly discovered" email.

Plaintiff has completely failed to demonstrate or even present an inference of fraud as needed for Rule 60(b)(3). Plaintiff is instead trying to relitigate her case under the guise of Rule 60(b)(2) and 3. Rule 60(b), however, is not meant to be an avenue for unhappy litigants to reargue a case they lost at trial. *Allender v. Raython Aircraft Co.*, 439 F 3d 1236 (10th Cir. 2006).

**One Week in May**

At trial, testimony was presented that Plaintiff worked a few hours over the weekend following the last full week prior to the APP arbitration. Plaintiff's Motion argues that these hours established that Plaintiff worked over forty (40) hours in the week prior to the arbitration. This, of course, ignores the clear testimony of Defendant Anton that Plaintiff took considerable time off during that week attending to issues related to her daughter's graduation. It further ignores the email evidence which supports Defendant Anton's testimony.

The issue of hours worked during that one (1) week in May of 2013, was addressed and argued in court and this Court's own Order states that while Plaintiff did not establish, even for that week, that she worked over 40 hours, that week was the closest Plaintiff came to showing she approached a 40-hour work week. (Dkt. 98) Plaintiff is now trying to mostly reargue that which she lost at trial. As stated in *Durkin v. Taylor*, 444 F Supp. 879, 889 (ED Va 1977), "whatever may be the purpose of Rule 59(e) it [was not] intended to give the unhappy litigant one additional chance to sway the judge."

Similarly, "Rule 60(b) relief is not available to allow a party merely to reargue issues previously addressed by the court." *Allender v. Raython Aircraft Co.*, 439 F 3d 1236 (10th Cir. 2006). If Plaintiff is dissatisfied with this Court's Judgment, her recourse is to file an appeal.

For the reasons set forth above, Plaintiff's Motion should be DENIED.

Respectfully Submitted,

/s/ James M. Thompson
**James M. Thompson, Esq.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via e-mail to the following: **Yvette D. Everhart, Esq.** (yeverhart@sasslawfirm.com) and **Cynthia Sass, Esq.** (csass@csasslawfirm.com) c/o the Law Offices of Cynthia Sass, West Dr. Martin Luther King Jr. Blvd., Tampa, FL on this 23rd day of May, 2017.

/s/ James M. Thompson
**James M. Thompson, Esq.**
Florida Bar No.: 0861080
jmthompsonlegal@gmail.com
**Kathryn C. Hopkinson, Esq.**
Florida Bar No.: 0102666
khthompsonlegal@gmail.com
mkthompsonlegal@gmail.com

THOMPSON LEGAL CENTER, LLC

777 S. Harbor Island Blvd., Ste. 245
Tampa, Florida 33602
(813) 769-3900 • (813) 425-3999 Fax

*Counselors for the Defendants*